1
2
3
4
5
6

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

7    UNITED STATES OF AMERICA,                    Case No:  CR 11-00523 YGR

8                    Plaintiff,                   **ORDER RE MOTIONS
                                                  IN LIMINE**
9             vs.
                                                  Dkt. 53, 59, 62, 78
10   HUGH LESLIE BARAS,

11                   Defendant.

12
13         Defendant Hugh Leslie Baras is charged in a six-count Superseding Indictment with

14   one count of Theft of Government Property in violation of 18 U.S.C. § 64, and five counts

15   of Tax Evasion in violation of 26 U.S.C. § 7201.  Dkt. 21.  The parties are presently before

16   the Court on Defendant's Motions in Limine, and the United States of America's

17   ("Government") Motion in Limine.  See Dkt. 53, 59.  Also before the Court are Defendant's

18   "*In Limine* Motion for Dismissal, Remedial Jury Instruction or Other Sanctions Based

19   Upon Interference With Right to Counsel," and Defendant's "*In Limine* Motion for

20   Dismissal Remedial Jury Instruction or Other Sanctions Based Upon Grand Jury Abuse."

21   Dkt. 62, 78.

22         Having read and considered the papers filed in connection with these matters and

23   being fully informed, the Court hereby GRANTS IN PART AND DENIES IN PART

24   Defendant's Motions in Limine; DENIES the Government's Motion in Limine; DENIES

25   Defendant's *In Limine* Motion for Dismissal, Remedial Jury Instruction or Other Sanctions

26   Based Upon Interference With Right to Counsel; and DENIES Defendant's *In Limine*

27   Motion for Dismissal Remedial Jury Instruction or Other Sanctions Based Upon Grand Jury

28   Abuse.

# I.    BACKGROUND

## A.    Factual Background

Defendant is a 69-year old psychologist.  Dkt. 67.  In 2001, he suffered a foot injury and was subsequently diagnosed with polymyalgia rheumetica, id., which is a disorder of the muscles and joints that is characterized by pain and stiffness on both sides of the body involving the shoulders, arms, neck, and buttock area.  See Expert Report of Dr. James Missett at 4 ("Missett Report").  Following his diagnosis, Defendant was treated with a variety of medications, including prednisone (a steroid medication), opiates, antidepressants, anxiolytics, stimulants, and cannabinoids.  See Dkt. 67; Expert Report of Dr. Bruce Victor at 1 ("Victor Report").

Due to his medical condition, Defendant applied to the Social Security Administration ("SSA") for disability benefits.  Dkt. 44.  After his application was approved, Defendant ceased working as a psychologist at Kaiser Permanente in Oakland, California.  Id.  In 2003, Defendant resigned from his position at Kaiser Permanente and opened a private psychotherapy practice in Palo Alto, California.  Dkt. 44.  From 2005-2009, Defendant failed to report more than $1,000,000 in income he received in connection with his private psychotherapy practice.  Id.; Dkt. 67.  Additionally, Defendant failed to inform the SSA that he had started a private psychotherapy practice, and therefore received approximately $80,000 in disability payments to which he was not entitled.  Dkt. 53.

According to the Government, Defendant did not simply file false tax returns underreporting large amounts of income from 2005 through 2009.  Dkt. 44.  Rather, the Government claims that Defendant took several additional affirmative steps to conceal his private practice income from authorities, including the following: cashing patients' checks against his personal bank account instead of depositing them into his business bank account; concealing his private practice income from his tax preparer by only reporting the checks he deposited into his business bank account as his total gross receipts; and making false statements to Internal Revenue Service ("IRS") agents.  Id.

Defendant does not dispute that he failed to report approximately $1,000,000 in income to the IRS over the five-year period charged in the Superseding Indictment, or that he failed to inform the SSA to stop sending him disability payments after he opened his private psychotherapy practice. See Dkt. 67. Rather, Defendant only disputes whether he had the requisite *mens rea* (i.e., "guilty mind") to be criminally liable for the crimes charged in the Superseding Indictment. Id. Defendant asserts that "due to taking a complex regimen of prescribed medications including steroids, opiates, cannabinoids, stimulants and antidepressants, he was intoxicated and had diminished mental capacity during the period he failed to report his self-employment income on his taxes, and failed to alert the [SSA] to stop sending him disability payments." Id. He further asserts that "due to the medications and their effects on [his] mental health, [he] honestly did not believe that he was making reportable income at his business; rather . . . due to the effects of the medications, he was in a qualitatively altered state of mind that was marked by either delusional or nearly delusional beliefs about his own financial status as well as about the Government and banking system." Id.

According to Defendant, while he can testify that he honestly believed that he did not have income he was required to report on his taxes at the time he filed his taxes from 2005-2009, and that he filed his tax returns in good faith and accepted the disability payments in good faith, he needs the assistance of experts to explain to the jury that the types of medications he was taking can indeed cause the type of impairment of mental functioning, delusions and idiosyncratic beliefs that he was experiencing. Dkt. 67. To this end, Defendant intends to call three medical experts to testify at trial regarding his medical condition to show that the prescribed medications he was taking caused him to suffer impaired mental functioning and judgment which prevented him from forming the specific intent to commit the crimes charged in the Superseding Indictment. Specifically,

Defendants seeks to present the expert testimony of Dr. James R. Missett ("Dr. Missett"), Dr. Bruce Victor ("Dr. Victor"), and Dr. David E. Smith ("Dr. Smith").  Dkt. 40.[1]

## B.    Procedural History

On August 4, 2011, Defendant was indicted on five counts of Tax Evasion in violation of 26 U.S.C. § 7201.  Dkt. 1.  On August 30, 2012, a Superseding Indictment was filed, charging Defendant with five counts of Tax Evasion in violation of 26 U.S.C. § 7201,[2] and one count of Theft of Government Property in violation of 18 U.S.C. § 641.[3] Dkt. 21.

Judge Armstrong scheduled a pretrial conference for January 7, 2013.  Dkt. 82.  In anticipation of trial, Defendant has filed five motions in limine, Dkt. 53, while the Government has filed one motion in limine.  Dkt. 59.  Defendant has also filed an *In Limine* Motion for Dismissal, Remedial Jury Instruction or Other Sanctions Based Upon Interference With Right to Counsel, and an *In Limine* Motion for Dismissal Remedial Jury Instruction or Other Sanctions Based Upon Grand Jury Abuse.  Dkt. 62, 78.  These motions are discussed in turn below.

---

[1] The Government anticipates calling Dr. Anna Glezer as a rebuttal expert witness. Dkt. 46.

[2] To convict Defendant of violating 26 U.S.C. § 7201, the Government must prove the following elements beyond a reasonable doubt:  (1) the defendant owed more federal income tax for a specified calendar year than was declared due on the defendant's income tax return for that calendar year; (2), the defendant knew that more federal income tax was owed than was declared due on the defendant's income tax return; (3), the defendant made an affirmative attempt to evade or defeat such additional tax; and (4) in attempting to evade or defeat such additional tax, the defendant acted willfully.  See 9th Cir. Model Jury Instr. 9.37 (modified); 26 U.S.C. § 7201.  In order to prove that the defendant acted "willfully," the Government must prove beyond a reasonable doubt that the defendant knew federal tax law imposed a duty on him, and the defendant intentionally and voluntarily violated that duty.  See 9th Cir. Model Jury Instr. 9.42 (modified as to gender only); Cheek v. United States, 498 U.S. 192, 201 (1991).  "In other words, if you know that you owe taxes and you do not pay them, you have acted willfully."  United States v. Easterday, 564 F.3d 1004, 1006 (9th Cir. 2009).

[3] To convict Defendant of violating 18 U.S.C. § 641, the Government must prove the following elements beyond a reasonable doubt:  (1) the defendant knowingly stole money with the intention of depriving the owner of the use or benefit of the money; (2) the money belonged to the United States; and (3) the value of the money was more than $1,000.  See 9th Cir. Model Jury Instr. 8.39 (modified as to gender only); 18 U.S.C. § 641.

## II.   LEGAL STANDARD

A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area.  United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009).  Under appropriate circumstances, a motion in limine may be used to exclude inadmissible or prejudicial evidence before it is offered at trial.  See Luce v. United States, 469 U.S. 38, 40 n. 2 (1984).  "Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues."  United States v. Tokash, 282 F.3d 962, 968 (7th Cir. 2002).

## III.   DISCUSSION

### A.   Defendant's Motions in Limine

#### 1.   Motion in Limine No. 1 Re Witness Exclusion: Granted

Defendant's Motion in Limine No. 1 seeks an order excluding all witnesses from the trial except when testifying with one exception: expert witnesses should be permitted to be present during the testimony of an opposing party's expert witness under Rule 615(c) of the Federal Rules of Evidence.  The Government does not oppose the motion.  However, the Government contends that IRS Special Agent Andres Gonzalez ("SA Gonzalez"), the case agent assigned to this case and an anticipated fact witness, should be excluded from any sequestration order pursuant to Rule 615(b).  In addition, the Government contends that IRS "Agent Mullins," who may testify as a summary expert witness, should be excluded from the sequestration order pursuant to Rule 615(b) & (c).  Defendant does not oppose the Government's contention that SA Gonzalez and IRS Agent Mullins should be excluded from the sequestration order.

Rule 615 governs the exclusion of witnesses from the courtroom.  It provides, in relevant part, that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. . . .  But this rule does not authorize excluding: . . . an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney [or] a person whose presence a party shows to be

essential to presenting the party's claim or defense. . . ." <u>See</u> Fed.R.Evid. 615. "The purpose of this rule is to prevent witnesses from 'tailoring' their testimony to that of earlier witnesses." <u>United States v. Ell</u>, 718 F.2d 291, 293 (9th Cir. 1983).

A party's expert witness can be a person "essential to presenting the party's claim or defense." <u>See</u> <u>United States v. Sechillie</u>, 310 F.3d 1208, 1213 (9th Cir. 2002). The Advisory Committee Notes to Rule 615 contemplate as much, stating that this exception includes " 'an expert needed to advise counsel in the management of litigation.' " <u>Id.</u> Rule 703 of the Federal Rules of Evidence provides that an expert "may base an opinion on facts or data in the case that the expert has been made aware of." Fed.R.Evid. 703. The Advisory Committee Notes to this rule elaborate further, providing that experts may base an opinion on facts presented at trial. <u>Id.</u>, Adv. Comm. Notes 1972.

Defendant's unopposed Motion in Limine No. 1 is GRANTED. All witnesses shall be excluded from trial except when testifying, except that a party's medical expert(s) may be present during the testimony of an opposing party's medical expert. In addition, SA Gonzalez is excluded from the sequestration order. <u>See</u> <u>United States v. Thomas</u>, 835 F.2d 219, 223 (9th Cir. 1987) (investigating FBI agent properly excluded from Rule 615 although he was a witness); <u>United States v. Little</u>, 753 F.2d 1420, 1441 (9th Cir. 1984) (IRS agent allowed to remain at prosecutor's table throughout trial despite assertion agent abused position by relaying information and coaching prospective government witnesses). IRS Agent Mullins is also excluded from the sequestration order.[4] <u>See</u> <u>U.S. v. Ratfield</u>, 342 Fed.Appx. 510, 512 (11th Cir. 2009) (district court did not abuse discretion in allowing IRS agent to remain in courtroom during trial although agent testified as a fact witness, an

---

[4] In tax evasion cases, courts permit IRS agents to testify as summary witnesses. <u>See</u>, <u>e.g.</u>, <u>United States v. Stierhoff</u>, 549 F.3d 19, 28 (1st Cir. 2008) ("We hold, therefore, that in a tax evasion case, a summary witness may be permitted to summarize and analyze the facts of record as long as the witness does not directly address the ultimate question of whether the accused did in fact intend to evade federal income taxes."); <u>United States v. Marchini</u>, 797 F.2d 759, 765-766 (9th Cir. 1986) (finding that the district court did not abuse its discretion by permitting an IRS agent to testify as an expert summary witness "based upon his having heard the testimony of previous witnesses and having reviewed the government's exhibits").

expert witness regarding trusts and taxation, and as a summary witness regarding defendant's evolving theories of the taxation of common law trusts) (unpublished); <u>United States v. Mohney</u>, 949 F.2d 1397, 1404-1405 (6th Cir. 1991) (district court did not abuse its discretion in allowing IRS summary witness to remain in the courtroom).

### 2. Motion in Limine No. 2 Re Post-Indictment Payments: Denied

Defendant's Motion in Limine No. 2 seeks an order granting Defendant permission to present evidence that he offered to pay the taxes he owed to the IRS when confronted by IRS Agents, made subsequent offers to pay his taxes and other money owed to the IRS and SSA, paid the SSA for all overpayments, and paid the IRS the amount due for the tax years in question. Defendant argues that such evidence is admissible under Rule 401 of the Federal Rules of Evidence[5] because it has at least some tendency to support his defense that he was unaware that he owed additional amounts, did not intend to evade his tax debts, and acted in good faith. According to Defendant, he intends to proffer this evidence to demonstrate his good faith and lack of criminal intent.

In response, the Government filed a notice to "reserve[] its right to object at trial on relevance grounds." However, because the evidence Defendant intends to offer is irrelevant under Ninth Circuit precedent, Defendant's Motion in Limine No. 2 is DENIED. <u>See</u> <u>U.S. v. Pang</u>, 362 F.3d 1187, 1194 (9th Cir. 2004). ("The district court correctly ruled that evidence of belated tax payments, made while awaiting prosecution, is irrelevant. . . . Were the rule otherwise, tax evaders could avoid criminal prosecution simply by paying up after being caught.") (citing <u>Sansone v. United States</u>, 380 U.S. 343, 354 (1965) (subsequent intention to pay taxes is no defense to a past intention to evade taxes)); <u>United States v. Ross</u>, 626 F.2d 77, 81 (9th Cir. 1980) (same)).

///

///

---

[5] Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed.R.Evid. 401.

### 3. Motion in Limine No. 3 Re Structure of Cash Deposits: Denied

Defendant's Motion in Limine No. 3 seeks an order excluding all evidence that he structured his bank deposits and the cashing of his patients' checks over time to avoid the $10,000 federal reporting requirement, which generally requires banks to report cash transactions in excess of $10,000. See 31 U.S.C. § 5331(a). It is a federal crime to structure cash deposits in such a way that the deposits do not trigger federal reporting requirements. See 31 U.S.C. § 5324(b). Defendant argues that this "other crimes" evidence tends only to show criminal propensity, and therefore should be excluded under Rule 403 and 404(b) of the Federal Rules of Evidence.

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed.R.Evid. 404(b)(1). Such evidence is nonetheless admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Id. 404(b)(2). To admit evidence of prior acts, it must: (1) tend to prove a material point in issue; (2) not be too remote in time; (3) be proven with evidence sufficient to show the act was committed; and (4) if admitted to prove intent, must be similar to the offense charged. United States v. Beckman, 298 F.3d 788, 794 (9th Cir. 2002). If evidence satisfies Rule 404(b), "the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403." United States v. Romero, 282 F.3d 683, 688 (9th Cir. 2002).

"Rule 404 is simply a specific qualification of the general rule of the admissibility of all relevant evidence." United States v. Curtin, 489 F.3d 935, 943 (9th Cir. 2007) (en banc). In Curtin, the Ninth Circuit explained as follows:

> Rule 404(b) is a rule of inclusion—not exclusion—which references at least three categories of other 'acts' encompassing the inner workings of the mind: motive, intent, and knowledge. Once it has been established that the evidence offered serves one of these purposes, the relevant Advisory Committee Notes make it clear that the 'only' conditions justifying the exclusion of the evidence are those described in Rule 403: unfair prejudice, confusion of the issues, misleading the jury, undue

delay, waste of time, or needless presentation of cumulative evidence[.]

United States v. Curtin, 489 F.3d 935, 944 (9th Cir. 2007) (en banc); accord United States v. Bailey, 696 F.3d 794, 806 (9th Cir. 2012) ("Indeed, unless the evidence of other crimes tends *only* to prove propensity, it is admissible.") (internal quotation marks and alterations omitted).

The Government contends that evidence regarding Defendant's structuring of financial transactions to avoid triggering third-party reporting requirements is admissible to prove that Defendant had the intent to conceal income for the purpose of evading the payment of taxes. The Government argues that these prior bad acts are probative of, among other things, Defendant's affirmative acts of tax evasion, and his knowledge, planning, and willfulness in connection with his tax evasion. According to the Government, the prior bad acts evidence it seeks to introduce is inextricably intertwined with the charged conduct and is direct evidence of Defendant's intent to evade paying taxes.

Defendant disagrees, arguing that the other crimes evidence the Government seeks to introduce tends only to show criminal propensity. However, the "classic propensity inference" that Rule 404(a) prohibits is using a prior conviction or act to show that the defendant committed the same crime or act again. United States v. Vavages, 151 F.3d 1193, 1194 (9th Cir. 1998). That situation is not present here. Defendant is not charged with violating 31 U.S.C. § 5324 for structuring cash deposits to evade federal reporting requirements; rather, he is charged with tax evasion in violation of 26 U.S.C. § 7201. Defendant does not dispute that this evidence is probative of issues *other than* propensity such as intent, knowledge, or absence of mistake or accident regarding his failure to pay taxes. Since the prior bad acts evidence is offered for purposes other than propensity and Defendant has not shown that it is inadmissible under Rule 403, the evidence of prior bad acts the Government intends to offer is admissible. See Bailey, 696 F.3d at 806 (prior bad act evidence inadmissible if its "only" purpose is to prove propensity).

Accordingly, Defendant's Motion in Limine No. 3 to exclude evidence regarding the structuring of cash deposits is DENIED. However, the Government is prohibited from characterizing the structure of these cash deposits as a violation of the reporting requirements themselves given that Defendant has not been charged therewith.

### 4. Motion in Limine No. 4 Re Expert Testimony: Granted in Part

Defendant's Motion in Limine No. 4 states that he intends to offer expert medical testimony regarding the effects of the prescribed medications he was taking on his mental state to support his defenses of intoxication and diminished capacity. Although unclear, it appears that Defendant requests an order granting him permission to introduce the testimony of Dr. Missett, Dr. Victor, and Dr. Smith in support of his intoxication and diminished capacity defenses. However, because the Government has filed a motion in limine seeking to exclude the testimony of these witnesses, the Court will address the admissibility of this testimony *infra*. For the reasons set forth below, Defendant's Motion in Limine No. 4 is GRANTED IN PART.

### 5. Motion in Limine No. 5 Re Patient Information: Granted

Defendant's Motion in Limine No. 5 requests an order directing the Government to redact patient information (i.e., the name and address of the patient) from any check introduced as a trial exhibit. Defendant contends that the identity of his patients is protected by the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d, et seq. The Government does not oppose the motion. The Government states that while it "does not stipulate that the requested redactions are required by any privilege or federal statute, [it] is amenable to redacting any last names and addresses from the upper-left-hand corner of each of the thousands of checks contained in the United States' trial exhibits numbered 61, 62, 63, 64 and 65, as well as the last names contained in United States' trial exhibit number 152, out of an abundance of caution." Accordingly, because the identity of Defendant's patients is irrelevant to whether Defendant committed the crimes charged in the Superseding Indictment, Defendant's unopposed Motion in Limine No. 5 is GRANTED.

### 6. Shorthand Constitutional Objections

Defendant asserts that he intends to raise federal constitutional objections at trial to be considered alongside non-constitutional evidentiary objections to preserve his right to effective assistance of counsel and to avoid any "plain error" review. In order to avoid lengthy speaking objections, Defendant requests that his evidentiary objections be deemed to include related federal constitutional objections. For example, Defendant requests that "objections to evidence labeled 'relevance' or 'unduly prejudicial' or per Fed. R. Evid. 401-404, should be understood not only to refer to the Federal Rules of Evidence, but also to the defendant's Fifth Amendment due process rights to have a trial free of inflammatory and unduly prejudicial evidence." According to Defendant, "[i]ncluding such federal objections within shorthand objections should save time, unnecessary lengthy speaking objections, and unnecessary lengthy sidebars, while preserving the defendant's right to appeal based upon any constitutional violations." The Government opposes Defendant's request "on the grounds that it is not clear what relief is requested." The Government "requests that the basis for any objections at trial be stated clearly at the time the objection is made."

The Court denies Defendant's request. Defendant has failed to demonstrate that the relief he seeks is appropriate. He has not shown that adopting his request would save time or is necessary to preserve his right to appeal. Defendant is free to object to the evidence presented by the Government at trial and the Court will rule on the objection at that time when the Court can consider the evidentiary objection in its appropriate context. The Court will rule on any objection interposed by Defendant at trial based on the specific evidence at issue and the ground(s) upon which the objection is made.

### B. Government's Motion in Limine Re Experts: Denied in Part

The Government's Motion in Limine seeks an order excluding the entire testimony of the medical experts Defendant intends to offer in support of his intoxication and

diminished capacity defenses,[6] i.e., the testimony of Dr. Missett, Dr. Victor, and Dr. Smith. The Government does not contest the qualifications of Defendant's experts, or claim that their opinions are unreliable under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) ("Daubert I"). Instead, the Government seeks to exclude the testimony of these witnesses on the ground that their opinions are irrelevant because they will not assist the trier of fact in determining whether Defendant possessed the requisite *mens rea* for the crimes charged in the Superseding Indictment. Specifically, the Government argues that the opinions of Defendant's medical experts are inadmissible because (i) there is no "fit" between their testimony and any issue in this case (including intent), and (ii) the probative value of the evidence, if any, is substantially outweighed by its capacity to confuse or mislead the jury. The Government asserts that none of the witnesses conclude that Defendant's mental condition had any genuine impact on his ability to form the required specific intent during any of the tax years at issue. According to the Government, the experts do not suggest that Defendant's mental condition had any genuine impact on his ability to remember that he earned more than $1,000,000 over the relevant five-year period, or to understand that he had a legal obligation to report income on his personal tax returns. The Government further asserts that even if the expert opinions were accepted by the jury, the opinions would not constitute a viable defense because evidence of impaired judgment is not evidence of a lack of *mens rea*.

### 1. Legal Framework for Expert Witness Testimony

Under Federal Rule of Evidence 702, an expert may testify if, among other things, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."[7] Fed.R.Evid. 702. Trial judges

---

[6] A defense based on voluntary intoxication is available only for specific intent crimes. United States v. Gracidas-Ulibarry, 231 F.3d 1188, 1195 (9th Cir. 2000). Likewise, diminished capacity is a defense only when a specific intent is at issue. United States v. Twine, 853 F.2d 676 (9th Cir. 1988). The diminished capacity defense is concerned with whether the defendant possessed the ability to attain the culpable state of mind which defines the crime. Id. at 678.

[7] Rule 702 provides:

are charged with the responsibility of acting as "gatekeepers" to ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.  See Daubert I, 509 U.S. at 589; Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149 (1999).

The Supreme Court has established a two-part analysis for determining whether expert testimony is admissible: (1) the trial court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue, i.e., whether the proffered testimony is reliable; and (2) the court must ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact.  United States v. Finley, 301 F.3d 1000, 1008 (9th Cir. 2002) (citing Daubert I, 509 U.S. at 591-593).

The second prong of the analysis, the "fit" requirement, requires the court to ensure that the proposed expert testimony is "relevant to the task at hand," i.e., that it "logically advances a material aspect of the proposing party's case."  Daubert v. Merrell Dow Pharm., 43 F.3d 1311, 1315 (9th Cir. 1995) ("Daubert II").  The second prong is not merely a reiteration of the general relevancy requirement of Rule 402.  Daubert II, 43 F.3d at 1321 n. 17.  Since scientific expert testimony can be both powerful and quite misleading due to the difficulty in evaluating it, federal judges must "exclude proffered scientific evidence under Rules 702 and 403 unless they are convinced that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury."  Id. (quotation marks and citations omitted).

"Because medical expert opinion testimony 'is based on specialized as distinguished from scientific knowledge, the Daubert factors are not intended to be exhaustive or unduly restrictive.' "  United States v. Sandoval–Mendoza, 472 F.3d 645, 655 (9th Cir. 2006).  The

---

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

proper test in evaluating medical expert testimony examines whether "physicians would accept it as useful and reliable."  Id.

Rule 704(b)[8] is a limitation on Rule 702.  United States v. Cohen, 510 F.3d 1114, 1125 (9th Cir. 2007).  "Even if expert testimony would 'assist the trier of fact' within the meaning of Rule 702, such testimony may be excluded under Rule 704(b) if the testimony 'state[s] an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged. . . .' "  Id.  The type of inference precluded under Rule 704(b) is an inference which would necessarily compel the conclusion that the defendant lacked the requisite *mens rea*.  Id.  "Expert testimony that compels the jury to conclude that the defendant did or did not possess the requisite *mens rea* does not 'assist the trier of fact' under Rule 702 because such testimony encroaches on the jury's vital and exclusive function to make credibility determinations."  See Finley, 301 F.3d at 1014-1015.

## 2.    Expert Reports

### a.    Dr. Missett

Defendant offers Dr. Missett for the following expert opinion:

> In the face of the severity of his 2001 injury and the development of the subsequent polymyalgia rheumatica, it is possible to state with a reasonable degree of medical certainty that [Defendant's] adherence to the physician-prescribed appropriate taking of the steroidal prednisone was the chief causal influence on his failure accurately to disclose his income or to pay the taxes due thereon.

Dr. Missett Report at 8.  Dr. Missett offers this opinion based on three interviews with Defendant in November 2010 for a total of three-and-a-half hours, and a review of Defendant's medical records and the reports concerning his psychological health.  Id. at 1-2.

Dr. Missett diagnoses Defendant as suffering from: (1) Ongoing Adjustment Disorder with Depressed Mood; (2) Major Depressive Disorder; (3) Personality Change of

---

[8] Rule 704(b) provides that "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone."  Fed.R.Evid. 704(b).

the Apathetic Type; (4) Occupational Problem; (5) Steroid (Prednisone), Narcotic (Vicodin), and Stimulant (Ritalin) - Induced Mood Disorder; (6) Narcotic (Vicodin), Stimulant (Ritalin), and Steroidal (Prednisone) - Induced Memory Disorder; and (7) Personality Disorder Not Otherwise Specified with Obsessive-Compulsive Features.  Id. He notes that Defendant began using prednisone in 2001, and that prednisone is the most widely used medication for polymyalgia rheumatica.  Dr. Missett Report at 7.  His report states that:

> Prednisone is . . . a medication that carries with it a number of problematic side-effects.  Those side-effects of prednisone that appear to have evidenced themselves to a greater or lesser extent in the case of [Defendant] include: amnesia; deficits in memory retention, in attention, in concentration, in mental speed and efficiency, and in occupational performance; depression; emotional instability and irritability; euphoria; headache; impaired cognition; insomnia; long-term memory loss; mania; mood swings; neuritis; neuropathy; paresthesias; personality changes; psychiatric disorders including aggravation of other pre-existing psychiatric conditions; restlessness; verbal memory loss; and withdrawn behavior.
>
> . . . .
>
> [Defendant's] medical records are replete with his suffering deficits in his memory retention, in his ability to concentrate and pay attention, in his mental speed and efficiency, in his ability emotionally and psychologically to fulfill the responsibilities of his position as a psychologist at Kaiser Permanente, in the depth and intensity of his depression and apathy, in a heightened experience of irritability and emotional instability, in insomnia, in mood swings, in personality changes, in restlessness, and in withdrawn behavior.  While he may have been subject to some of these conditions solely as a result of the pain and disability accompanying his initial physical injury and the subsequent polymyalgia rheumatica, his long-term taking of the steroidal prednisone that was prescribed by his treating physician appears to have been the principal cause of the above-noted changes in his mental and emotional state, all of which are extensively documented in his very detailed medical records from Kaiser Permanente Oakland.
>
> It is impossible in hindsight to say with a reasonable degree of medical certainty that [Defendant] would never have failed accurately to disclose his income or to pay the taxes due thereon if he had never been so severely injured or so globally disabled as a result of the initial 2001 injury and the subsequent development of the polymyalgia rheumatica.  In the face of the severity of his 2001 injury and the development of the subsequent polymyalgia rheumatica, it is possible to state with a reasonable degree of medical certainty that [Defendant's] adherence to the physician-prescribed appropriate taking of the steroidal prednisone was the chief causal influence on his failure accurately to disclose his income or to pay the taxes due thereon.

Id. at 7-8.

### b. Dr. Victor

Defendant offers Dr. Victor for the following expert opinions:

> [Defendant's] failure to pay his taxes during [the relevant period] was not due to a consciously considered or deliberate attempt to evade taxes, but rather to substantial and deleterious alterations in [his] mental functioning and judgment due to the combined effects of: a) longterm Prednisone use for his Polymyaigia Rheumatica, b) the subsequent lengthy and difficult withdrawal from Prednisone, c) the complex regimen of opiate analgesics, stimulants, antidepressants, and cannabinoids that he was prescribed for clinical conditions related to his Polymyaigia Rheumatica, and d) the pre-existing changes in [Defendant's] mental status from his chronic pain and depression that were associated with his Polymyaigia Rheumatica. These factors individually, and especially in combination, exerted a profoundly negative impact upon [Defendant's] mental functioning and judgment which, I believe, to a reasonable degree of medical certainty caused the aberrant behavior regarding [Defendant's] obligation to pay his taxes.

Dr. Victor Report at 10. Dr. Victor offers these opinions based on his review of, among other things, Defendant's medical records and his two-hour interview of Defendant in April 2012. Id. at 1.

### c. Dr. Smith

Dr. Smith is a physician with a specialty in addiction medicine. Dr. Smith Report at 1. Defendant offers Dr. Smith for the following opinions:

> Regardless of whether it is labeled as an addiction, continued, chronic, polydrug use impacts brain function and influences behaviors because of impaired judgment and information processing. These changes are clearly seen in [Defendant's] behavior after many years of regularly consuming a complex series of prescribed psychoactive medications (combining steroids, opiates, stimulants, cannabinoids, and anti-depressants). The powerful mixture of these substances produced significant alterations in his brain function which compromised executive functioning, impacting his judgment and reasoning ability.

> It is my opinion that [Defendant] suffered active addictive disease and associated process addiction during the years he was ingesting the daily regimen of prescribed psychoactive medications. The consequences of this addiction presented as impaired judgment manifesting across several behavioral domains such as under-reporting and under paying his taxes, lack of record keeping regarding his business income, hoarding cash money for no apparent reason or benefit, paranoid ideation regarding the safety of banks, and not utilizing financial resources to attend to obviously needed basic home repairs.

Dr. Smith Report at 3. Dr. Smith's opinions are based on his review of various documents, including Defendant's medical records. Id. at 1.

### 3. Analysis

As mentioned above, the Government does not contest that the proffered expert opinions are reliable under <u>Daubert I</u>, only that they are not relevant. The Court agrees in part based on the current record with respect to the expert testimony of Dr. Missett and Dr. Smith. The Court does not agree with the Government with respect to the expert testimony of Dr. Victor. Each of the experts proffered by Defendant seeks to testify that Defendant's mental condition impaired his ability to form the requisite specific intent to evade paying taxes. As such, their testimony could potentially assist the trier of fact within the meaning of Rule 702 because the testimony will offer an explanation as to how Defendant could believe that he was acting in accordance with the law, thereby negating the *mens rea* element of the charges in the Superseding Indictment. <u>See</u> <u>Cheek</u>, 498 U.S. at 201 (holding that a defendant cannot be convicted of violating a federal tax law if he harbors a good faith belief that he was not violating any of the provisions of the tax laws). The opinions of Defendant's medical experts are offered to corroborate Defendant's claim that he did not evade paying taxes intentionally or knowingly steal money from the Government with the intention of depriving the Government of the use or benefit of that money. The Court disagrees in general with the Government's contention that the testimony of Defendant's experts will not "shed[] genuine light on the defendant's capacity to attain the [requisite] *mens rea*." Dr. Victor's report specifically opines that Defendant's failure to pay his taxes during the relevant period was "not due to a consciously considered or deliberate attempt to evade taxes. . . ." However, both Dr. Missett and Dr. Smith reach opinions without providing a sufficient causal connection with the underlying information upon which they rely.

The Government relies on <u>United States v. Scholl</u>, 166 F.3d 964 (9th Cir. 1999) to argue that the expert testimony of Dr. Missett, Dr. Victor, and Dr. Smith should be excluded in its entirety. In <u>Scholl</u>, the defendant was convicted of filing false tax returns arising out of his failure to report correctly gambling wins and losses. <u>Id.</u> at 969. In support of his theory that he lacked the requisite intent to be convicted of filing false tax

### 3. Analysis

As mentioned above, the Government does not contest that the proffered expert opinions are reliable under <u>Daubert I</u>, only that they are not relevant. The Court agrees in part based on the current record with respect to the expert testimony of Dr. Missett and Dr. Smith. The Court does not agree with the Government with respect to the expert testimony of Dr. Victor. Each of the experts proffered by Defendant seeks to testify that Defendant's mental condition impaired his ability to form the requisite specific intent to evade paying taxes. As such, their testimony could potentially assist the trier of fact within the meaning of Rule 702 because the testimony will offer an explanation as to how Defendant could believe that he was acting in accordance with the law, thereby negating the *mens rea* element of the charges in the Superseding Indictment. <u>See</u> <u>Cheek</u>, 498 U.S. at 201 (holding that a defendant cannot be convicted of violating a federal tax law if he harbors a good faith belief that he was not violating any of the provisions of the tax laws). The opinions of Defendant's medical experts are offered to corroborate Defendant's claim that he did not evade paying taxes intentionally or knowingly steal money from the Government with the intention of depriving the Government of the use or benefit of that money. The Court disagrees in general with the Government's contention that the testimony of Defendant's experts will not "shed[] genuine light on the defendant's capacity to attain the [requisite] *mens rea*." Dr. Victor's report specifically opines that Defendant's failure to pay his taxes during the relevant period was "not due to a consciously considered or deliberate attempt to evade taxes. . . ." However, both Dr. Missett and Dr. Smith reach opinions without providing a sufficient causal connection with the underlying information upon which they rely.

The Government relies on <u>United States v. Scholl</u>, 166 F.3d 964 (9th Cir. 1999) to argue that the expert testimony of Dr. Missett, Dr. Victor, and Dr. Smith should be excluded in its entirety. In <u>Scholl</u>, the defendant was convicted of filing false tax returns arising out of his failure to report correctly gambling wins and losses. <u>Id.</u> at 969. In support of his theory that he lacked the requisite intent to be convicted of filing false tax

- 17 -

### 3. Analysis

As mentioned above, the Government does not contest that the proffered expert opinions are reliable under <u>Daubert I</u>, only that they are not relevant. The Court agrees in part based on the current record with respect to the expert testimony of Dr. Missett and Dr. Smith. The Court does not agree with the Government with respect to the expert testimony of Dr. Victor. Each of the experts proffered by Defendant seeks to testify that Defendant's mental condition impaired his ability to form the requisite specific intent to evade paying taxes. As such, their testimony could potentially assist the trier of fact within the meaning of Rule 702 because the testimony will offer an explanation as to how Defendant could believe that he was acting in accordance with the law, thereby negating the *mens rea* element of the charges in the Superseding Indictment. <u>See</u> <u>Cheek</u>, 498 U.S. at 201 (holding that a defendant cannot be convicted of violating a federal tax law if he harbors a good faith belief that he was not violating any of the provisions of the tax laws). The opinions of Defendant's medical experts are offered to corroborate Defendant's claim that he did not evade paying taxes intentionally or knowingly steal money from the Government with the intention of depriving the Government of the use or benefit of that money. The Court disagrees in general with the Government's contention that the testimony of Defendant's experts will not "shed[] genuine light on the defendant's capacity to attain the [requisite] *mens rea*." Dr. Victor's report specifically opines that Defendant's failure to pay his taxes during the relevant period was "not due to a consciously considered or deliberate attempt to evade taxes. . . ." However, both Dr. Missett and Dr. Smith reach opinions without providing a sufficient causal connection with the underlying information upon which they rely.

The Government relies on <u>United States v. Scholl</u>, 166 F.3d 964 (9th Cir. 1999) to argue that the expert testimony of Dr. Missett, Dr. Victor, and Dr. Smith should be excluded in its entirety. In <u>Scholl</u>, the defendant was convicted of filing false tax returns arising out of his failure to report correctly gambling wins and losses. <u>Id.</u> at 969. In support of his theory that he lacked the requisite intent to be convicted of filing false tax

returns, the defendant sought to introduce testimony from a psychological expert that compulsive gamblers, like himself, "have distortions in thinking and 'denial,' which impact their ability and emotional wherewithal to keep records." <u>Id.</u> at 970.  In affirming the district court's exclusion of this evidence under Rule 702, the Ninth Circuit noted that there was no evidence presented at the <u>Daubert</u> hearing that addicted gamblers were incapable of truthfully reporting their gambling income on their tax forms.  <u>Id.</u>  In so ruling, the Ninth Circuit stated:

> While [the expert] was prepared to testify that [defendant] could have misevaluated his winnings and losses and believed he was telling the truth, [the expert] also acknowledged that there was no support in the literature for this opinion or for the idea that pathological gamblers cannot truthfully report gambling income.  Indeed, [the expert] made it clear that it was not his opinion that compulsive gamblers cannot truthfully report income on their tax returns.  Thus, evidence that compulsive gamblers are in denial, or that their thinking about gambling in relation to their life is distorted, would not tend to show that [defendant] did not believe his tax return to be correct in reporting winnings and losses, or that he did not falsely subscribe to it specifically intending not to report gambling wins and losses.

<u>Id.</u> at 971.

Because <u>Scholl</u> is distinguishable from the present case, it does not govern.  In <u>Scholl</u>, there was no evidence that an addiction to gambling could cause a person to believe that a false tax return omitting winnings was true.  By contrast, Defendant's medical experts opine that the medications prescribed to Defendant resulted in changes to Defendant's mental and emotional state, thereby causing impaired judgment.  The experts' testimony suggests that Defendant's medications could cause him to believe that he did not owe taxes and was not required to inform the SSA that he returned to work.  The testimony offers an explanation as to why Defendant, who by all accounts has previously complied with all tax and other laws, failed to inform the SSA that he returned to work and failed to pay taxes on the substantial income he earned from his private psychotherapy practice.  This testimony will help Defendant counter the Government's contention that he knew what he was doing was illegal.  Even if the jury accepts that Defendant's prescribed medications altered his mental and emotional state and caused impaired judgment, the jury must still conclude what impact the medications had on Defendant's ability to form the requisite *mens rea*.  The jury

may accept the testimony of Defendant's medical experts, but nonetheless conclude that Defendant intended to evade taxes and knew that his failure to report his return to work with the SSA was wrong.

Defendant relies on <u>Cohen</u> as support for his contention that his experts should not be precluded from testifying at trial. In <u>Cohen</u>, the Ninth Circuit reversed the district court's exclusion of expert psychological testimony proffered by the defendant to negate the *mens rea* element of the offense of assisting in the evasion of taxes. <u>Cohen</u>, 510 F.3d at 1126. There, the defendant sought to introduce testimony that he suffered from "Narcissistic Personality Disorder," which made him "irrational to the point of dysfunction." <u>Id.</u> at 1122-1123. The district court excluded the expert's testimony because it "did no more than explain why defendant intentionally violated his known legal duties." <u>Id.</u> at 1124. In reversing the district court's ruling, the Ninth Circuit noted that the expert's report specifically stated that defendant "did not intend to violate the law," and that a narcissistic personality disorder like defendant's can cause a person to continue to believe something to be true despite overwhelming evidence of its patent absurdity. <u>Id.</u> at 1124-1125. The Ninth Circuit found that had the expert been permitted to testify to the effect that Defendant did not intend to violate the law, his testimony "would have assisted the trier of fact within the meaning of Rule 702." <u>Id.</u> at 1124.

The Court finds that the proffered expert testimony of Dr. Victor is admissible under the rationale of <u>Cohen</u> to the extent that he testifies to the effect that the Defendant did not intend to violate the law due to his mental condition caused by the prescribed medications he was taking. Because such testimony will assist the trier of fact, the Government's Motion in Limine to exclude Dr. Victor's testimony in its entirety is DENIED. With respect to the opinions of Dr. Missett and Dr. Smith, the Court reserves ruling on the Government's motion and orders an evidentiary hearing to determine whether the proposed experts can adequately articulate a causal connection for their opinions.

With respect to any expert opinion on this issue, all such testimony is limited by Rule 704(b) which prohibits the experts from stating an opinion or inference as to whether

the Defendant did or did not have the mental state or condition constituting an element of the crimes charged. See Fed.R.Evid. 704(b). Accordingly, Dr. Victor is prohibited from opining, as set forth in his expert report, that Defendant's "failure to pay his taxes during [the relevant period] was not due to a consciously considered or deliberate attempt to evade taxes." This testimony states an opinion as to whether Defendant had the mental state constituting an element of the tax evasions charges. As such, it is inadmissible.

### C. Defendant's *In Limine* Motion for Dismissal, Remedial Jury Instruction or Other Sanctions Based Upon Interference With Right to Counsel

#### 1. Motion Re Disparaging Comment Re Defense Counsel: Denied

Defendant moves for an order dismissing the Superseding Indictment as a sanction for a disparaging comment made about defense counsel by SA Gonzalez to Defendant's tax preparer, Larry Jacobs ("Jacobs"). According to Defendant, SA Gonzalez told Jacobs that defense counsel had in engaged in unprofessional behavior by requesting to be present during Jacob's interview with SA Gonzalez. Defendant contends that SA Gonzalez's disparaging remark has interfered with his relationship with his counsel by affecting the trust he has placed in his counsel,[9] and has violated his Sixth Amendment right to counsel. As an alternative to dismissal, Defendant requests that the Court give a remedial jury instruction to "remove the taint of the improper conduct."

The Sixth Amendment provides that "[i]n all criminal prosecutions the accused shall . . . have the assistance of counsel for his defense." U.S. Const. amend. VI. In cases in which there has been a violation of the Defendant's Sixth Amendment constitutional rights by interference with the attorney-client relationship, "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." United States v. Morrison, 449 U.S. 361, 365 (1981) (footnote omitted). In Morrison, the Supreme Court considered whether dismissal of the indictment was proper where DEA agents met with a defendant who they knew had

---

[9] Defense counsel claims that after SA Gonzalez made the disparaging comment made about him, Defendant felt compelled to hire and consult with a second attorney.

retained counsel, encouraged her to cooperate, and disparaged her attorney. In reviewing prior cases involving Sixth Amendment deprivations, the Court noted that "remedies should be tailored to the injury suffered from the constitutional violation" to assure the defendant the effective assistance of counsel and a fair trial. Id. at 364-365. Assuming without deciding that a Sixth Amendment violation had occurred, the Court held that dismissal of the indictment was inappropriate, absent a showing of prejudice to the ability of counsel to provide adequate representation or an adverse impact upon the proceedings. Id. at 366-367.

The Court finds that Defendant has failed to demonstrate that dismissal of the Superseding Indictment is warranted based on SA Gonzalez's remark to Jacobs. The cases cited by Defendant in support of his position are inapposite. Indeed, Defendant has not cited a single case where an indictment was dismissed, let alone a case in which the indictment was dismissed based on a solitary statement about defense counsel made by a Government agent to a witness in the case. Moreover, even assuming for the sake of argument that SA Gonzalez interfered with Defendant's right to counsel in violation of Defendant's Sixth Amendment rights, Defendant has not demonstrated how SA Gonzalez's remark has adversely impacted the criminal proceeding or defense counsel's ability to provide adequate representation. Defendant has not shown that SA Gonzalez's comment has prejudiced the quality or the effectiveness of his legal representation or otherwise had any negative impact on the proceedings. As such, there is simply no basis to dismiss the Superseding Indictment based on the remark SA Gonzalez made about defense counsel to Jacobs.

Likewise, Defendant has provided no basis for a remedial jury instruction. Defendant has not cited any authority demonstrating that a remedial jury instruction is appropriate or provided persuasive argument showing that such a remedy is tailored to the "injury" suffered from the alleged constitutional violation. Accordingly, Defendant's *In Limine* Motion for Dismissal, Remedial Jury Instruction or Other Sanctions Based Upon Interference With Right to Counsel is DENIED.

///

## 2.    Motion Re the Government's Press Release: Denied

Although not filed as a separate motion in limine, Defendant moves for an order dismissing the Superseding Indictment based on the Government's one-sided press release and the "attendant adverse pretrial publicity," which consists of three newspaper articles. In the alternative, Defendant requests a remedial jury instruction.  According to Defendant, he has been prejudiced by the "adverse pretrial publicity" because the Government's press release and news articles did not provide any information about his "mental state defense."

"Due process requires that the accused receive a trial by an impartial jury free from outside influences."  Sheppard v. Maxwell, 384 U.S. 333, 362 (1966); see Irvin v. Dowd, 366 U.S. 717, 722 (1961) (a criminal defendant is entitled to be tried by "a panel of impartial, 'indifferent' jurors").  If pretrial publicity regarding a case is such that it is impossible to seat an impartial jury, the trial judge should "continue the case until the threat abates, or transfer it to another county not so permeated with publicity."  Sheppard, 384 U.S. at 363.  In order to show a violation of his constitutional rights, the defendant must show either actual or presumed prejudice.  Randolph v. People of the State of Cal., 380 F.3d 1133, 1142 (9th Cir. 2004).  Prejudice is presumed when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime.  Id.  However, prejudice is rarely presumed.  Harris v. Pulley, 885 F.2d 1354, 1361 (9th Cir. 1988) ("The presumed prejudice principle is rarely applicable, and is reserved for an extreme situation.") (citation and quotation marks omitted).  To establish actual prejudice, the defendant must demonstrate that the jurors exhibited actual partiality or hostility that could not be laid aside.  Randolph, 380 F.3d at 1142 (quotation marks omitted).

The Court finds that Defendant has failed to demonstrate that the press release and/or the "attendant adverse pretrial publicity" violated his due process rights.  Defendant has not established any actual prejudice caused by the press release.  Nor has he shown that this is the rare case in which prejudice should be presumed.  In evaluating a claim of presumed prejudice, courts typically consider three factors: (1) whether there was a barrage

of inflammatory publicity immediately prior to trial amounting to a huge wave of public passion, (2) whether the media accounts were primarily factual or editorial in nature, and (3) whether the media accounts contained inflammatory, prejudicial information that was not admissible at trial. Randolph, 380 F.3d at 1142 (quotation marks omitted). The press release and the media accounts of the case attached to Defendant's motion do not constitute a "barrage of inflammatory publicity immediately prior to trial amounting to a huge wave of public passion." Moreover, the press release and the media accounts were published over a year ago, are factual in nature, and do not contain inflammatory, prejudicial information that is inadmissible at trial.

Defendant, for his part, offers no authority or legal analysis demonstrating that the drastic remedy of dismissal is appropriate. Nor has Defendant shown that a remedial instruction is warranted. Indeed, the appropriate remedy for prejudicial pretrial publicity is to "continue the case until the threat abates, or transfer it to another county not so permeated with publicity," see Sheppard, 384 U.S. at 363, not to dismiss the indictment.[10] Accordingly, Defendant's request for an order dismissing the Superseding Indictment or a remedial jury instruction based on the Government's press release is DENIED.

### D. Defendant's *In Limine* Motion for Dismissal, Remedial Jury Instruction or Other Sanction Based Upon Grand Jury Abuse: Denied

Defendant moves for an order dismissing the Superseding Indictment, a remedial jury instruction, or some other sanction based on SA Gonzalez's abuse of the grand jury process. According to Defendant, SA Gonzalez abused the grand jury process by informing Jacobs that he would subpoena Jacobs if Jacobs did not agree to be interviewed outside the presence of defense counsel. As an initial matter, Defendant concedes that a factual dispute exists as to whether SA Gonzalez actually threatened to serve Jacobs with a grand jury subpoena. Defendant acknowledges that SA Gonzalez claims that he told Jacobs

---

[10] There is nothing in the record showing that the pretrial publicity in this case warrants a change of venue. Defendant has not pointed to any prejudicial and inflammatory media publicity about the charged crimes, let alone shown that the community has been saturated with such publicity. See Harris, 885 F.2d at 1361.

that he would serve him with a *trial* subpoena, not a grand jury subpoena, if Jacobs did not consent to be interviewed without defense counsel present. Further, it is undisputed that Jacobs was interviewed by SA Gonzalez and was not served with a grand jury or trial subpoena.

Based on the record presented, it is unclear whether SA Gonzalez engaged in the conduct that forms the basis of the instant motion. Moreover, Defendant has not cited any authority holding that the drastic sanction of dismissal is an appropriate remedy for the alleged misconduct. Nor has Defendant shown that a remedial instruction is appropriate. Defendant has not identified any prejudice arising from Agent Gonzalez's alleged misconduct. Accordingly, Defendant's "*In Limine* Motion for Dismissal, Remedial Jury Instruction or Other Sanction Based Upon Grand Jury Abuse" is DENIED.

## IV. <u>CONCLUSION</u>

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Defendant's Motion in Limine Nos. 1 and 5 are GRANTED. Defendant's Motion in Limine No. 4 is GRANTED IN PART. Defendant's Motion in Limine Nos. 2 and 3 are DENIED.

2. The Government's Motion in Limine is DENIED IN PART. The motion is denied with respect to Dr. Victor. The Court reserves ruling on the motion with respect to Dr. Missett and Dr. Smith and will schedule an evidentiary hearing to determine whether either of these experts can adequately articulate a causal connection for their opinions.

3. Defendant's "*In Limine* Motion for Dismissal, Remedial Jury Instruction or Other Sanctions Based Upon Interference With Right to Counsel" is DENIED.

4. Defendant's "*In Limine* Motion for Dismissal, Remedial Jury Instruction or Other Sanction Based Upon Grand Jury Abuse" is DENIED.

5. This Order terminates Docket 53, 59, 62 and 78.

IT IS SO ORDERED.

Dated: December 11, 2013

_____
YVONNE GONZALEZ ROGERS
United States District Judge

- 24 -